F I L E D
CLERK, U.S. DISTRICT COURT

12/12/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: _____TV_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2023 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MICHAEL M. BECK,<br>　aka "Big Money Mike,"<br>　aka "Big Money Mike 6,"<br><br>　　　　Defendant. | CR No. 2:23-cr-00616 -ODW<br><br>I N D I C T M E N T<br><br>[15 U.S.C. §§ 78j(b), 78ff, 17 C.F.R. § 240.10b-5: Securities Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c): Criminal Forfeiture] |

　　　The Grand Jury charges:

COUNTS ONE THROUGH THREE

[15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5]

A.　INTRODUCTORY ALLEGATIONS

　　　At times relevant to this Indictment:

　　　1.　Defendant MICHAEL M. BECK, also known as ("aka") "Big Money Mike," aka "Big Money Mike 6," resided in Los Angeles County and Riverside County.

　　　2.　Twitter, Inc. was an online social networking service on which users could post messages known as tweets.

3. A Twitter "handle" was the name a user selected to use on Twitter.

4. Defendant BECK's Twitter handle was "@bigmoneymike6."

5. Defendant BECK used the email addresses bigmoneymike6@gmail.com, pennystockhotline@gmail.com, and pennystockcult@gmail.com to market stocks to an email group he called "TeamBillionaire."

6. Interactive Brokers, LLC; E*Trade Financial Corporation; and OptionsXpress by Charles Schwab were online brokers that provided trade execution and clearing services to customers around the world.

7. Defendant BECK's mother, H.R., resided in Los Angeles County and Riverside County.  H.R. held brokerage accounts in her own name at Interactive Brokers and E*Trade, in which stock shares were traded at defendant BECK's direction.

8. Defendant BECK's then-girlfriend, M.V. (formerly known as M.B. and hereafter referred to as "M.B."), resided in San Bernardino County.  M.B. held brokerage accounts in her own name at E*Trade and Charles Schwab, in which stock shares were traded at defendant BECK's direction.

9. Stock shares of the following companies were publicly traded over the counter and constituted "securities" within the meaning of the Securities Exchange Act of 1934 (collectively, the "Targeted Microcap Stocks"):

    a. Pick-Ups Plus, Inc. ("PUPS");

    b. Clikia Corp., formerly known as MK Automotive, Inc. ("MKAU");

    c. Zann Corp. ("ZNNC");

    d. Vidaroo Corp. ("VIDA");

   e. Canadian Aerospace Group International, Inc. ("CASG");

   f. The Marquie Group, Inc., formerly known as Music for Your Life Inc. ("MYLI");

   g. Peoplesway.com, Inc. ("PLWY"); and

   h. United Consortium Ltd. ("UCSO").

 10. "Stock scalping" was the unlawful practice of recommending that others purchase shares of a particular stock while, contrary to the recommendation, secretly selling shares.

B. <u>The SCHEME TO DEFRAUD</u>

 11. Beginning in or about February 2017 and continuing until in or about May 2019, in Los Angeles and Riverside County, within the Central District of California, and elsewhere, defendant BECK, knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce and the mails, in connection with the purchase and sales of securities, used and employed manipulative deceptive devices and contrivances by: (1) employing a scheme to defraud; (2) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchases and prospective purchasers of securities.

 12. The scheme to defraud, a stock scalping scheme, operated, in substance, as follows:

   a. Defendant BECK purchased shares of the Targeted Microcap Stocks and caused such shares to be purchased in accounts held by H.R. and others close to him.

    b. After purchasing the shares, defendant BECK issued tweets indicating he would soon be issuing a "stock alert," i.e., a recommendation to buy a particular stock.

    c. To increase the trading volume of the Targeted Microcap Stocks and make them appear more attractive to potential investors, defendant BECK often previewed his stock picks to his TeamBillionaire email group, which gave the members of that group the opportunity to purchase the stock prior to defendant BECK's promotion of the stock more widely on Twitter. These emails were materially false and misleading in that they:

      i. Failed to state the material fact that defendant BECK planned to sell -- and planned to cause H.R. and others close to him to sell -- numerous shares of the very stock he was recommending; and

      ii. Often falsely promised the members of the TeamBillionaire email group they were going to make large profits.

    d. To further induce purchases of the Targeted Microcap Stocks in advance of his public recommendations, defendant BECK sometimes paid third parties to post favorable commentary about the stock on investor message boards.

    e. Defendant BECK publicly announced his stock picks on Twitter and promoted the Targeted Microcap Stocks by repeatedly tweeting about them. These tweets contained materially false and fraudulent statements and omitted material facts necessary to make the statements not misleading. For instance:

      i. On or about April 25, 2017, after announcing that his stock recommendation was PUPS, defendant BECK tweeted: "I'VE

4

BOUGHT 27,000,000 SHARES OF $PUPS TODAY!!  IM STILL LOADING...LETS SQUEEZE THE SHORTERS !!!  #BMM [Big Money Mike]."

(I)  In reality, as defendant BECK knew, defendant BECK had not bought any shares of PUPS that day.  Rather, he had sold over 30 million shares from his own brokerage account and directed the sale of millions of PUPS shares from brokerage accounts held in the name of his mother, H.R., and his then-girlfriend, M.B.

ii.  On or about December 21, 2018, defendant BECK tweeted, "TODAY I FOUND OUT THAT A ROGUE TRADER HAS DUMPED HIS 619,718 SHARES ON $MYLI[.]  I BOUGHT 573,272 OF THOSE SHARES...IM BUYING MORE SHARES TOMORROW."

(I)  In fact, as defendant BECK knew, defendant BECK did not buy any MYLI shares in December 2018.  Indeed, on the day of this tweet, he was causing MYLI shares to be sold from brokerage accounts held in the name of his mother, H.R.

iii. On or about March 12, 2019, defendant BECK tweeted, "IM GOING TO PERSONALLY PUNISH EVERY SINGLE SHORT SELLER ON $PLWY !!!! . . ."

(I)  By threatening so-called short sellers, defendant BECK misleadingly and falsely suggested PLWY's stock price was dropping because others were shorting PLWY shares and not because he was selling shares.  In reality, as defendant BECK knew he had caused millions of shares of PLWY stock to be sold from a brokerage account held in the name of his mother, H.R., the previous day.

iv.  On or about March 14, 2019, defendant BECK tweeted, "IM LOADING $PLWY ON THE BIDS . . . ITS GOING BACK UP . . . I BUY 'PANIC'. . . NO NEED TO WORRY WHEN #BMM IS ON BIDS."

(I)   In reality, as defendant BECK knew, defendant BECK did not purchase any PLWY shares in March 2019.

f.   As defendant BECK's recommendations induced the price of the Targeted Microcap Stocks to increase, defendant BECK sold shares, and caused H.R. and others to sell shares, of the Targeted Microcap Stocks he was promoting and encouraged his followers and the public to buy.  Defendant BECK also caused such stock to be sold from brokerage accounts held in his mother's name and in the names of others close to him.

g.   Defendant BECK did not disclose to his Twitter or email followers that he intended to sell and cause others to sell the Targeted Microcap Stocks at the same time he was promoting them.

h.   After shares of the Targeted Microcap Stocks were sold in H.R.'s brokerage accounts, H.R. shared the proceeds from the sales with defendant BECK.

C.   EXECUTION OF THE FRAUDULENT SCHEME

13.   On or about the dates set forth below, in Los Angeles and Riverside County, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, and in furtherance of the manipulative and deceptive devices described above, defendant BECK directly and indirectly caused the use of the following means and instrumentalities of interstate commerce in connection with the purchase and sale of securities:

| COUNT | DATE | INSTRUMENTALITY OF INTERSTATE COMMERCE |
|---|---|---|
| ONE | 12/21/2018 | Tweet from defendant BECK's Twitter account, using Twitter handle @bigmoneymike6, falsely representing that defendant BECK had "bought 573,272 of [MYLI] shares" and would be "buying more shares tomorrow[.]" |

| COUNT | DATE | INSTRUMENTALITY OF INTERSTATE COMMERCE |
|---|---|---|
| TWO | 3/11/2019 | Sale of approximately 200,000 shares of PLWY stock for proceeds of approximately $4,300 in an Interactive Brokers account in the name of defendant BECK's mother, H.R. |
| THREE | 4/29/2019 | Email from defendant BECK's email account, pennystockhotline@gmail.com, to prospective investors previewing that UCSO was going to be defendant BECK's stock pick for an upcoming Twitter alert. |

COUNTS FOUR THROUGH SIX

[18 U.S.C. § 1343]

14.  The Grand Jury realleges paragraphs 1 through 10 and 12 of this Indictment here.

A.  THE SCHEME TO DEFRAUD

15.  Beginning in or about February 2017 and continuing until in or about May 2019, in Los Angeles and Riverside County, within the Central District of California, and elsewhere, defendant MICHAEL M. BECK, also known as ("aka") "Big Money Mike," aka "Big Money Mike 6," knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud potential investors in the Targeted Microcap Stocks as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, promises, and the concealment of material facts.

16.  The scheme to defraud operated, in substance, as described in paragraphs 11 and 12 of this Indictment.

B.  USE OF INTERSTATE WIRES

17.  On or about the dates set forth below, in Los Angeles and Riverside County, within the Central District of California, and elsewhere, for the purpose of executing the scheme to defraud described above, defendant BECK transmitted and caused the transmission of the following wire communications in interstate commerce:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| FOUR | 12/18/2018 | Sale of approximately 14,902 shares of MYLI stock for proceeds of approximately $6,250 in an E*Trade account in the name of defendant BECK's mother, H.R. |

8

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|---|---|---|
| FIVE | 3/11/2019 | Email from defendant BECK's email account, bigmoneymike6@gmail.com, to prospective investors previewing that PLWY was going to be defendant BECK's stock pick for an upcoming Twitter alert. |
| SIX | 5/1/2019 | Sale of approximately 20,000 shares of UCSO stock for proceeds of approximately $1,220 in an Interactive Brokers account in the name of defendant BECK's mother, H.R. |

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

18. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of defendant MICHAEL M. BECK's conviction of the offenses set forth in any of Counts One through Six of this Indictment.

19. Defendant BECK, if so convicted, shall forfeit to the United States of America the following:

    a. All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

    b. To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

20. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), defendant BECK, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of defendant BECK, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                         A TRUE BILL

                                         /s/

                                         Foreperson

E. MARTIN ESTRADA
United States Attorney

*[signature]*

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

BRETT A. SAGEL
Assistant United States Attorney
Chief, Corporate and Securities
  Fraud Strike Force

ALEXANDER SCHWAB
Assistant United States Attorney
Deputy Chief, Corporate and
  Securities Fraud Strike Force

CAROLYN S. SMALL
JENNA WILLIAMS
Assistant United States Attorneys
Corporate and Securities Fraud
  Strike Force